UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


GEORGE BARASICH, ET AL.                  CIVIL ACTION


VERSUS                                   NO: 05-4180 c/w
                                         05-4197, 05-4199,
                                         05-4212, 05-4512,
                                         06-5102

SHELL PIPELINE COMPANY, LP,              SECTION: "J" (3)
ET AL.



ORDER AND REASONS

Before the Court are all or part of the following five
motions: (1) **Shell Pipeline Company LP's Motion to Dismiss**
***Lincoln*** **and** ***Frelich*** **Complaints for Failure to State a Claim Under**
**12(b)(6) (Rec. Doc. 54);** (2) **Chevron Corporation's Rule 12(b)(6)**
**Motion to Dismiss (Rec. Doc. 55);** (3) **Defendants' Rule 12(b)(6)**
**Motion to Dismiss for Failure to State a Claim (Rec. Doc. 57);**
(4) **Bass Enterprises Production Company's Rule 12(b)(6) Motion to**
**Dismiss the** ***Tinson*** **Complaint (Rec. Doc. 58);** and (5) **Defendant**
**Venice Energy Services Company, L.L.C.'s Adoption of Motion to**
**Dismiss (Rec. Doc. 65).** All the motions were opposed. The Court
heard oral argument on these motions on July 19, 2006 and ruled
from the bench on several of these motions. (See Rec. Doc. 91 for
summary of rulings). The Court now rules on the remaining
portions that were taken under advisement at that hearing.

**THE MOTIONS**

(1) **Shell Pipeline Company LP's Motion to Dismiss** *Lincoln* **and** *Frelich* **Complaints for Failure to State a Claim Under 12(b)(6) (Rec. Doc. 54):**

    **A.   Background Facts**

    Plaintiffs in these proposed class actions are property owners in Plaquemines Parish who allegedly sustained damage to their real and/or personal property during Hurricane Katrina as a result of the rupture of Shell's crude oil pipeline that traverses the hurricane protection levee in lower Plaquemines Parish near Nairn, Louisiana ("Nairn pipeline"). (<u>Lincoln</u> Complaint, ¶4; <u>Frelich</u> Complaint, ¶17).

    The proposed class in <u>Lincoln</u> (05-4197) alleges that Shell is liable under the Louisiana law of strict liability. (<u>Lincoln</u> Complaint, ¶¶ 4, 6). The <u>Lincoln</u> Plaintiffs claim damages for "irrevocabl[e] contamination," diminution in property value, and loss of use. (<u>Lincoln</u> Complaint, ¶11).

    The proposed class in <u>Frelich</u> (05-4199) alleges that at some point during or after Hurricane Katrina made landfall near where Shell's Nairn pipeline crosses the hurricane protection levee in Empire, Louisiana, the pipeline ruptured and spewed crude oil into the "flood waters which engulfed the immediate vicinity." (<u>Frelich</u> Complaint, ¶¶ 5,6,8, 12). Plaintiffs claim that "once the levee is repaired and the flood water removed, undoubtedly the crude oil which originated from the pipeline will settle onto the property of the putative class..." (<u>Frelich</u> Complaint, ¶¶

2

15(a)-(g), 16, 20(a),(c)).

**B.   The Parties' Arguments**

At the July 19, 2006 oral argument, the Court ruled on several parts of Shell's motion to dismiss.  (Rec. Doc. 91).  The only issue taken under advisement, which is now before the Court relates to Shell's assertion that Plaintiffs' claims for trespass cannot stand. Shell argues that the <u>Frelich</u> Complaint does not state a claim for recovery of damages for trespass because the <u>Frelich</u> Plaintiffs do not plead that Shell consciously desired the results and/or believed that the injuries were substantially certain to follow from its actions and/or omissions, particularly in light of the attenuated causation.  Shell further asserts that Plaintiffs do not plead any other allegations that would satisfy the elements of an intentional tort.

In opposition, Plaintiffs assert that the <u>Frelich</u> Complaint does state a claim for recovery of damages for trespass.  They claim that intent is not a prerequisite to recovery for trespass damages.  Instead, Plaintiffs assert that the unintentional tort of trespass based upon a violation of Civ. Code Art. 2315 is precisely the allegation contained in their Complaint.

## C.    Discussion

### 1.) Legal Standard

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988). A Rule 12(b)(6) motion should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u>, <u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Rule 12(b)(6) motions are disfavored and rarely granted. <u>Id.</u>, <u>quoting</u> <u>Sosa v. Coleman</u>, 646 F.2d 991, 993 (5th Cir. 1981). Further, dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the plaintiff pleads himself out of court by "admitting all the ingredients of an impenetrable defense." <u>Xechem, Inc. v. Bristol-Myers Squibb Co.</u>, 372 F.2d 899,901 (7th Cir. 2004). A complaint does not fail simply because some defense is potentially available. <u>United States v. N. Trust Co.</u>, 373 F.3d 886, 888 (7th Cir. 2004).

### 2.) Trespass

The tort of trespass is defined as the unlawful physical invasion of the property of another. <u>Terre Aux Boeufs Land Co. v. J.R. Gray Barge Company</u>,2000-2754, (La. App. 4th Cir. 2001), 803

4

So. 2d 86.  Generally, a defendant may not be held liable for
trespass "in the absence of evidence that the trespass resulted
from some intentional act taken by the defendant."  Id. at 96.
The Court in Terre Aux Boeufs, discussed the lack of Louisiana
jurisprudence on the classification of a civil trespass as an
intentional tort:

> Nevertheless, there could be one situation in which a
> defendant may be held liable for trespass, even in the
> absence of intent- i.e., when the plaintiff offers
> proof that the defendant was at fault in causing the
> trespass pursuant to the general tort article, La.
> C.C.P. Art. 2315.  Id. (citing M.Cresson, comment, "The
> Louisiana trespass action: a 'real' problem.  56 La. L.
> Rev. 477 (1995) citing Phillips v. Town of Many, 538
> So.2d 745 (La. App. 3rd Cir. 1989); Brown v. Bedsole,
> 447 So.2d 1177 (La. App. 3rd Cir. 1984).  Id. at 97.

Because intent may not always be required, according to
Louisiana jurisprudence, this Court declines to dismiss
Plaintiffs' claims in this regard and finds that property-owning
Plaintiffs have stated a claim for trespass for which relief may
be granted.


(2) **Chevron Corporation's Rule 12(b)(6) Motion to Dismiss (Rec.
Doc. 55)**:

**A.    Background Facts**

Plaintiffs in the consolidated proceedings represent two
putative classes of claimants: (1) commercial fisherman who claim

5

to have suffered economic damages as a result of oil spills from Defendants' land-based facilities during Hurricane Katrina (within this class is a sub-class of oyster fishermen); and (2) property owners who claim to have suffered property damage due to those same spills (the preceding motion to dismiss dealt with the claims of the property owners). Plaintiffs allege that Defendants are liable in solido for, among other things, punitive damages under maritime law.

**B.   The Parties' Arguments**

Chevron Corporation ("Chevron") argues that maritime law is not applicable to Plaintiffs' claims; therefore, Plaintiffs are not entitled to punitive damages.  Chevron asserts that its alleged conduct did not occur on navigable waterways and is not substantially related to traditional maritime activity.  Chevron submits that while the Admiralty Extension Act extends admiralty jurisdiction and law to injuries occurring on land caused by vessels on navigable waters, the Act is inapplicable to this situation, wherein injuries occurred on *water* as a result of activities that occurred on *land*.  See 46 U.S.C. 740.  Chevron notes that Plaintiffs have not alleged torts that occurred on navigable waterways or were caused by a vessel in navigation. Rather, their Complaints allege spills from land-based oil

storage tanks and pipelines.  See Adventures Unlimited, Inc. v. Chrisman, 208 F.Supp. 2d 871, 874 (E.D. Tenn. 2002)(highway truck accident resulting in spill of chicken meat into river does not satisfy locality test).  Furthermore, Chevron argues that the storage of oil in inland tanks and the transportation of oil through inland pipelines does not have a substantial relationship to maritime activity.  Thus, because the allegations against Chevron are not substantially related to maritime activity, Chevron argues that Plaintiffs' attempt to apply maritime law is legally improper.

In opposition, Plaintiffs claims maritime law in applicable to this situation because Courts traditionally treat matters affecting the fishing grounds of commercial fishermen as falling within the admiralty jurisdiction.  See Poe v. PPG Industries, 00-1141, (La. App. 3rd Cir. 3/28/01), 782 So.2d 1168, 1176; Union Oil Co. v. Oppen, 501 F.2d 558, 576-71 (9th Cir. 1974); Louisiana ex rel. Guste v. M/V Testbank, 524 F.Supp 1170, 1173-74 (E.D. La. 1981); Pruitt v. Allied Chemical Corp., 523 F.Supp 975, 981-82 (E.D. Va. 1981); Burgess v. M/V Tamano, 370 F.Supp 247, 250 (D. Me. 1972).

C.  **Discussion**

Admiralty jurisdiction over torts may properly be invoked only when: (1) the tort occurred on navigable waters (called the

locus test), and (2) the tort bore a substantial relationship to traditional maritime activity (called the nexus test).  Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S. Ct. 1043, 130 L.Ed. 2d 1024 (1995).  The Grubart Court explained that the nexus test involves a two-part inquiry. First, the Court must evaluate the "general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." Id. at 538. Second, the Court "must determine whether the 'general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Id. at 534.

This Court finds that Plaintiffs' action fails to satisfy the locus test because the alleged wrong did not occur on navigable waters.  Plaintiffs' Complaints allege spills from land-based oil storage tanks and pipelines.  Thus, the tort occurred on land - not on navigable waters.  Even assuming that Plaintiffs allege the oil eventually migrated into navigable waters, admiralty jurisdiction would not exist.  Plaintiffs do not meet the nexus test as none of Defendants' activities related to maritime activity.  The instruments involved, a land-based interstate pipeline and land-based storage tanks, are not maritime in nature.  See Johnson v. Colonial Pipeline Co., 830 F. Supp. 309, 313 (E.D. Va. 1993).  Instead, these claims arise from oil escaping from Defendants' respective land-based facilities

and pipelines during a catastrophic hurricane.  Defendants'
land-based activities did not have a substantial relationship to
traditional maritime activities.

Therefore, this Court concludes that maritime law is not
applicable to Plaintiffs' claims.  Punitive damages, therefore,
are not available to Plaintiffs.  Chevron's motion to dismiss
should be granted.

(3) **Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim filed by Defendants Bass Enterprises, Shell Pipeline, Chevron, Sundown energy, and Venice Energy (Rec. Doc. 57):**

### A.   Background Facts

In Danos (05-4212) and Barasich (05-4180), commercial
fishermen in proposed classes have brought claims for damages
sustained by the state's waterways and aquatic life when
Hurricane Katrina caused Defendants' land-based storage tanks
and/or pipelines to burst and release crude oil.   These
fishermen claim that Defendants failed to take protective
measures to ensure that oil would not leak from tanks or
pipelines during a hurricane.

The Danos Plaintiffs claim pecuniary and nonpecuniary
damages, including contamination of property, mental anguish and
emotional distress, inconvenience and loss of use, loss of
property value, and economic loss.  The Barasich Plaintiffs claim
a loss of income and loss of use of the estuaries.  Barasich also
includes a proposed class of property and/or business owners in
Plaquemines Parish who sustained damage to their property as a

result of the spills.

**B.   The Parties' Arguments**

At the July 19, 2006 oral argument, the Court ruled on several parts of Defendants' motion to dismiss.  (Rec. Doc. 91). The only issues taken under advisement, which are now before the Court relate to (1) standing for commercial fishermen, (2) Plaintiffs' claims for public or private nuisance, and (3) Plaintiff's claims for mental anguish.

**First**, Defendants Bass Enterprises Production Company ("Bass"), Shell, Chevron, Sundown Energy LP ("Sundown"), and Venice Energy Services Co., L.L.C. make two arguments in support of their assertion that the commercial fishermen Plaintiffs have no standing to pursue claims for damages to the State's natural resources. Defendants first claim that neither the OPA nor Louisiana's state equivalent, the Louisiana Oil Spill Prevention and Response Act ("LOSPRA") afford Plaintiffs a private right of action for damages of natural resources, which include "all land, fish, shellfish, fowl, wildlife, biota, vegetation, air, water, groundwater supplies, and other similar resources owned, managed, held in trust, regulated, or otherwise controlled by the state." La. R.S. 30:2454(17).  Defendants next claim that commercial fishermen have no proprietary interest in the State's waterways

10

or aquatic life.  Defendants contend that the State of Louisiana
- not Plaintiffs - own the waterways, fish, and aquatic life.
Thus, Defendants claim Plaintiffs have no proprietary rights
therein distinct from the general public.  In support of this
argument, Defendant state that Plaintiffs do not allege distinct
harms, and accordingly, their generalized claims of damage to
fishing grounds are the same as any other member of the public
under Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct.
2130, 119 L.Ed.2d 351 (1992).

     Defendants further claim that Plaintiffs' lack of standing
is reflected in Louisiana's constitutionally-based public trust
doctrine, which holds that the natural resources of the state are
held in common trust for all citizens of the state.  See La.
Const. Art. IX, § 1.  Defendants note that "[t]he control and
supervision of the wildlife of the state, including all aquatic
life ... is vested in the Louisiana Wildlife and Fisheries
Commission." La. Const. Art. IX § 7.  Additionally Defendants
point out that "the ownership and title to all...fish, other
aquatic life...including all oysters and other shellfish...are
and remain the property of the state, and shall be under the
exclusive control of the Wildlife and Fisheries Commission." La.
R.S. 56:3. Thus, Defendants claim that the fishermen have no

propriety rights in the waters or aquatic life of Louisiana and lack standing to bring a claim of damages.

Plaintiffs claim they have standing because their claims are not for damages to natural resources, but instead for personal damages they suffered from Defendants' pollution of the environment, which was inextricably linked to the Plaintiff's livelihood.  Plaintiffs claim commercial fishermen have long been granted by admiralty law a special right to bring damages for pollution to their fishing grounds, even if their only claims are for economic loss.

**Second**, Defendants claim that the Danos Plaintiffs have failed to assert a cognizable claim for public or private nuisance. Defendants contend that nuisance, like absolute liability under Article 667, requires a proprietor-neighbor relationship.  See  Dean v. Hercules, Inc., 328 So. 2d 69, 71 (La. 1976).  According to the Louisiana Supreme Court, liability under Article 667 arises only "when activity by one party holding a right to immovable property has caused damages to a party holding a right to neighboring property." Inabnet v. Exxon Corp., 93-0681 (La. 09/06/94), 642 So. 2d 1243, 1251-52. Thus, Defendants argue that because Plaintiffs have not alleged that they are neighbors of Defendants, or that they hold an ownership

12

interest or other right derived from the landowners in any lands allegedly damaged, Plaintiffs have failed to state a claim in strict liability for nuisance.

In opposition, Plaintiffs claim that they have adequately pled a claim for public or private nuisance.  Specifically, Plaintiffs claim that they have alleged a violation of their rights to be free from public and/or private nuisance created by Defendants' conduct.  They claim that they are "neighbors" to Defendants' storage and pipeline facilities because they commercially fish in those waters.  Essentially, the Danos Plaintiffs assert that they have set forth a claim for nuisance because Defendants are owners and/or operators of ruptured storage tanks and/or pipelines that created an unreasonable risk of harm to persons, property, and the environment.

**Third**, Defendants assert that mental anguish damages are not recoverable under the alleged facts. Defendants note that the Danos Plaintiffs do not allege any personal injury or a physical impact or injury to property in which they have a propriety interest.  Defendants claim that mental anguish damages are not recoverable for damage to property that Plaintiffs do not own (i.e., fishing grounds and aquatic life).  Defendant also assert that Plaintiffs are not entitled to recover for mental anguish

13

because they were not present at the time of the property damage
(due to the mandatory evacuation order in Plaquemines Parish).
Defendants' conduct was not specifically directed at Plaintiffs,
and Plaintiffs cannot show that there is an especial likelihood
of genuine and serious mental distress arising from the
circumstances of this case.

In opposition, Plaintiffs assert that because they have
alleged claims under a nuisance theory, they should be able to
recover damages for mental anguish for damage to property.
Plaintiffs also claim that they may recover for the emotional
distress they experienced when they saw the damage to the
wetlands, the river, and the oyster leases. Plaintiffs assert
that although they are admittedly not the "owners" of the
waterways, they have a possessory interest in them, or at least
at a minimum, in their oyster leases and other physical property.

**C.   Discussion**

Using the legal standard discussed on page 4 of this Order
and Reasons, the Court now addresses the following:

**1.)   Standing for Commercial Fishermen**

Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48
S.Ct. 134, 72 L.Ed. 290 (1927) stands for the broad proposition
that a plaintiff is barred from recovering for economic loss
resulting from physical damage to property in which he has no

proprietary interest. In Robins, the charterer of a vessel was denied recovery for its loss of use after the vessel was negligently damaged by the dry dock operator. The Fifth Circuit has described Robins as being "a pragmatic limitation imposed by the Court upon the tort doctrine of foreseeability." Louisiana ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019, 1023 (5th Cir. 1985), cert. denied, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).

In the instant case, the issue is whether certain commercial fishermen plaintiffs fall within the purported exception to Robins, as recognized by the district court in Louisiana ex rel. Guste v. M/V TESTBANK, 524 F.Supp. 1170 (E.D.La.1981), and in Union Oil Co. v. Oppen, 501 F.2d 558 (9th Cir.1974).[1]  In TESTBANK, 524 F.Supp. at 1173, the district court recognized that claims for economic loss of commercial fishermen deserve special attention, as "[t]raditionally, seamen have been recognized as favored in admiralty and their economic interests require the fullest possible legal protection." Accordingly, the district court refused to dismiss the economic claims of commercial fishermen "even in the absence of any proprietary rights over aquatic life." Id.  However, as distinguishable from this case, the facts of TESTBANK occurred in a purely maritime setting.  In fact, the damage to the commercial fishing industry was caused by

---

[1]     This Court notes that this exception has never been formally recognized by the Fifth Circuit or the United States Supreme Court.

the collision of two vessels on a navigable waterway.  Here, the wrongful conduct occurred on land, and this Court has determined that maritime law does not apply to this case.  Thus, this Court finds that those commercial fisherman who lack physical damage to property cannot recover on their *federal* claims for the economic loss they allegedly experienced as a result of this oil spill.

The next issue is whether these same commercial fisherman who lack physical damage to property have standing to assert *state* law claims for the economic loss they allegedly experienced as a result of this oil spill.  In <u>Dempster v. Louis Eymard Towing Co., Inc.</u>, 503 So.2d 99 (La.App. 5 Cir. 1987), <u>writ denied</u>, 505 So.2d 1136 (La. 1987), two fishermen filed suit for the loss of a fishing site, seeking to recover for the loss of their nets, the loss of the catch in the nets, and the loss of future profits from the use of the fishing site.  The Louisiana Fifth Circuit affirmed summary judgment dismissing plaintiffs' economic damage claims finding that fishermen did not have a cause of action for economic loss arising from the destruction of a fishing site.  The state court explained, "[a]s plaintiff had no proprietary interest in the fish which were at large in the waters, and no right to object to the state's interfering with the exercise of the fishing privilege granted, it has no right to complain and claim damages." <u>Id.</u> at 101, <u>quoting Vanacor v. Dep't of Wildlife & Fisheries</u>, 483 So.2d 1127, 1130 (La. App. 5 Cir. 1986).

16

Also, in <u>Louisiana Seafood Management Council v. Louisiana Wildlife & Fisheries Commission</u>, 97-1367 (La. 5/19/98), 715 So.2d 387, 392, the Louisiana Supreme Court determined that licensed commercial fishermen had no cause of action under the "taking clause" of the United States Constitution as to the loss of fishing profits brought about by the state's regulatory actions. In its <u>Louisiana Seafood</u> opinion, the supreme court reiterated the principles espoused in <u>Dempster</u>:

> The lack of any property interest in the fish in the waters is well-settled, statutorily and judicially. <u>See</u> La.Civ.Code arts. 450, 452; La.Rev.Stat. 56:3. In <u>LaBauve v. Louisiana Wildlife & Fisheries Comm'n</u>, 444 F.Supp. 1370 (E.D.La.1978), the court explained that "fish which are at large in state waters are the property of the state, as public or common things;" that "an individual has no proprietary interest in the fish he is prevented from catching;" and that "an individual has no proprietary right to fish commercially in state waters." 444 F.Supp. at 1378. Fishermen's inability to establish a private property interest in free-swimming corporeal fish has precluded recovery under this theory. Douglas F. Britton, <u>The Privatization of the American Fishery: Limitations, Recognitions, and the Public Trust</u>, 3 Ocean & Coastal L.J. 217, 236 (1997) (noting that under these circumstances fishermen have been regarded as "possessing no compensable, or prosecutable, property interests" for takings claims purposes).

<u>Id.</u> at 392. Thus, based on state law, there is no property right or ownership of the fish in the state's waters. <u>See</u> La.Civ.Code arts. 450, 452; La. Rev. Stat. 56:3. However, such a right may exist for oyster fishermen based on La. Rev. Stat. 56:423(B)(1), which states, in pertinent part;

17

> B. (1) A lessee of oyster beds or grounds who has
> obtained, recorded, and marked his lease in
> compliance with the law shall have the right to
> maintain an action for damages against any person,
> partnership, corporation, or other entity causing
> wrongful or negligent injury or damage to the beds
> or grounds under lease to such lessee.

Therefore, this Court finds that the commercial fisherman Plaintiffs (with the exception of the oyster fishermen) who did not sustain physical damages to their property lack standing to sue under either federal or state law.  Therefore, their claims should be dismissed, and Defendants' motion to dismiss is granted in part and denied in part.

### 2.)  Public or Private Nuisance

The Louisiana Civil Code states, in pertinent part:

> Although a proprietor may do with his estate
> whatever he pleases, still he cannot make any work
> on it, which may deprive his neighbor of the
> liberty of enjoying his own, or which may be the
> cause of any damage to him. However, if the work
> he makes on his estate deprives his neighbor of
> enjoyment or causes damage to him, he is
> answerable for damages only upon a showing that he
> knew or, in the exercise of reasonable care,
> should have known that his works would cause
> damage, that the damage could have been prevented
> by the exercise of reasonable care, and that he
> failed to exercise such reasonable care.

La. Civ. Code art. 667.  According to the Louisiana Supreme Court, liability under Article 667 arises only "when activity by one party holding a right to immovable property has caused damages to a party holding a right to a neighboring property."  Inabnet v. Exxon Corp., 93-0681 (La. 09/06/94), 642 So.2d 1243,

1251-52.

Plaintiffs assert that they are in fact "neighbors" to defendant's storage and pipeline facilities as they fish commercially in the waters adjacent thereto, and it is into those very waters that defendants discharged their oil products. Plaintiffs have not alleged that they hold an ownership interest or other rights derived from landowners in any lands or waters allegedly damaged.  The scope of articles 667-669 is limited to the obligations proprietors owe to their neighbors.

This Court finds, as Judge Sarah Vance found in <u>Barasich v. Columbia Gulf Transmission Co.</u>, 2006 WL 3333797, *13 (E.D. La. Sept. 28, 2006), that Plaintiffs' Article 667 claims fail because they cannot demonstrate that the "neighbor" referred to in Article 667 could be a party whose property is physically remote and not adjacent to Defendants' property. Thus, the definition of "neighbor" under Article 667 does not contemplate the relationship Plaintiffs assert.  While it may be conceivable that some property owners might be able to show they were in fact "neighbors" within the meaning of article 667, that is not what the putative class has pled in this case.  Plaintiffs' claims for nuisance should be dismissed.

### 3.)  Mental Anguish

This Court finds that Plaintiffs may not recover for damage to property in which they do not have an ownership or proprietary interest.  Defendants' 12(b) Motion to Dismiss, is based on the

assertion that mental anguish damages are not recoverable.

Without personal injury, plaintiffs may recover damages for infliction of emotional distress only 1) for damage to property; or 2) when the conduct is directed at the plaintiff and the plaintiff can demonstrate "an especial likelihood for genuine and serious mental distress arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Moresi v. Dep't of Wildlife & Fisheries, 567 So.2d 1081, 1096 (La. 1990), rehearing denied, 567 So.2d 1081 (La. 1990).

In property damage cases, mental anguish damages are generally awarded only where the property is damaged by : 1) an intentional  or illegal act; 2) an act for which the tortfeasor will be strictly or absolutely liable; 3) acts constituting nuisance; or 4) acts occurring when the owner is present or at the time, or shortly after, damage was negligently inflicted and suffers psychic trauma as a result. Williams v City of Baton Rouge, 731 So. 2d 240, 250 n.5 (La. 1999).  Here, the Court finds that mental anguish damages are not recoverable for the following reasons.  First,  Plaintiffs' intentional tort claims have previously been dismissed. (Rec. Doc. 91).  Second, Defendant cannot be "strictly liable" under La. Civ. Code art. 2317 because that article now requires scienter.  Also, Plaintiffs' claims for strict or absolute liability for conducting ultra-hazardous activities have been dismissed (Rec. Doc. 91). Third, Plaintiffs'

nuisance claims have been dismissed.  Last, based on the
mandatory evacuation order in Plaquemines Parish before and
immediately after the hurricane, Plaintiffs have not alleged that
they were physically present to witness the incident and, thus,
cannot claim to have suffered psychic trauma from witnessing the
event.  Plaintiffs have not shown that there is an especial
likelihood that they will suffer genuine and serious mental
distress arising from the circumstances in this case.  See:
<u>Moresi</u>, <u>supra</u>.  Thus, this Court concludes that Defendants'
motion should be granted in this regard, and the mental anguish
claims should be dismissed as to all Plaintiffs.

(4)  **Bass Enterprises Production Company's Rule 12(b)(6) Motion to
Dismiss the Tinson Complaint (Rec. Doc. 58)**:

**A.    Background Facts**

The proposed class of plaintiffs in this case include
property and/or business owners in Plaquemines Parish who allege
that Bass Enterprises Production Company ("Bass") negligently
allowed the "release of substantial quantities of barrels of
petroleum hydrocarbons onto property within Plaquemines Parish."
(<u>Tinson</u> Complaint, ¶¶ 4,6).

**B.    The Parties' Arguments**

At the July 19, 2006 oral argument, the Court ruled on
several parts of Bass's motion to dismiss.  (Rec. Doc. 91).  The
only issue taken under advisement, which is now before the Court
relates to Bass's assertion that Plaintiff's claims for

negligence cannot stand.  Bass contends that Plaintiffs have
failed to assert a cognizable claim for negligence because they
have not alleged and proved that Bass had custody of the thing
causing the injury, that it contained a defect (i.e., a condition
creating an unreasonable risk of harm), and that the defective
condition caused the plaintiffs' injuries (i.e., was a cause in
fact of the harm).  Additionally, Bass argues that the <u>Tinson</u>
plaintiffs have failed to allege and prove that Bass had actual
or constructive knowledge of the risk of harm presented by the
condition of the thing and failed to take steps to remedy the
condition or to warn persons of its existence.

In opposition, Plaintiffs claim that their Complaint was
specific enough in that it alleged that Bass is responsible for
the negligent release of hydrocarbons onto their properties.
Plaintiffs note that Bass may conduct discovery to determine more
about the specifics of their claims.  They further note that the
exact claims were upheld in <u>Blanchard v. Sundown Energy, L.P.</u>,
no. 05-4198 (E.D. La.).

C.   **Discussion**

Accepting as true all of Plaintiffs' allegations and
resolving all doubts in favor of Plaintiffs, this Court finds
that the Plaintiff property owners have stated a claim for
negligence upon which relief may be granted.  Bass's motion is,
therefore, denied on this ground.

(5) **Defendant Venice Energy Services Company, L.L.C.'s Adoption
of Motion to Dismiss (Rec. Doc. 65)**:

This motion simply adopts the arguments set forth in
Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State
a Claim filed by Defendants Bass Enterprises, Shell Pipeline,
Chevron, Sundown energy, and Venice Energy (Rec. Doc. 57).
Therefore, this Court's ruling on this motion is as expressed
above.

### CONCLUSION

Following these rulings, the claims remaining in these
consolidated matters relate to those brought by property owners
or those commercial fishermen who have an actual proprietary
interest in physical property (i.e., oyster fishermen who have an
ownership interest in oyster leases or commercial fisherman who
have also claimed damage to physical property).  Accordingly,

**IT IS ORDERED** that the remaining portion of **Shell Pipeline
Company LP's Motion to Dismiss *Lincoln* and *Frelich* Complaints for
Failure to State a Claim Under 12(b)(6) (Rec. Doc. 54)** relating
to Plaintiffs' trespass claims should be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that **Chevron Corporation's Rule
12(b)(6) Motion to Dismiss (Rec. Doc. 55)** should be and is hereby
**GRANTED**.

**IT IS FURTHER ORDERED** the remaining portions of **Defendants'
Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**
filed by Defendants Bass Enterprises, Shell Pipeline, Chevron,
Sundown energy, and Venice Energy **(Rec. Doc. 57)** should be and

23

hereby are **GRANTED IN PART and DENIED IN PART**.

    **IT IS FURTHER ORDERED** the remaining portions of **Bass Enterprises Production Company's Rule 12(b)(6) Motion to Dismiss the <u>Tinson</u> Complaint (Rec. Doc. 58)** should be and are hereby **DENIED**.

    **IT IS FURTHER ORDERED** Defendant **Venice Energy Services Company, L.L.C.'s Adoption of Motion to Dismiss (Rec. Doc. 65)** should be and is hereby **GRANTED IN PART and DENIED IN PART**.

    New Orleans, Louisiana this 20th day of November, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

24